UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAHEL A. ASSAR,              )<br>                              )<br>     Plaintiff,              )<br>                              )<br>     v.                       )<br>                              )<br>PARISA HAJBABAEE et al.,      )<br>                              )<br>     Defendants.             )<br>                              ) | Case No. 24-cv-02921 (APM) |

## MEMORANDUM OPINION AND ORDER

**I.**

Upon his death in July 2024, Farhad Moshiri ("Farhad") left behind over $1.7 million in a savings account at JP Morgan Chase Bank. This case is about who now owns that money: Farhad's sister, Laylee Moshiri ("Laylee"), or his wife, Parisa Hajbabaee, both Claimant-Defendants and Cross-Claimants in this case. Before the court is Laylee's Motion for Summary Declaratory Judgment, which seeks a finding that she is the rightful owner of the funds. For the reasons discussed below, the court denies the motion.

**II.**

**A.**

The following facts are undisputed or, if disputed, viewed in the light most favorable to the non-movant, Claimant-Defendant Hajbabaee. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In 2019, Farhad opened a savings account with JP Morgan Chase Bank (account number ending in 2083) through his designated power of attorney, Interpleader-Plaintiff Sahel Assar.

Notice of Errata, ECF No. 25, Laylee's Mot. for Summ. Declaratory J., ECF No. 25-1 [hereinafter Laylee's Mot.], at 2 ¶ 1; *id.*, Ex. 1, ECF No. 24-1. Farhad designated his sister, Laylee, as the payable-on-death beneficiary of the account. *Id.* at 2 ¶ 1. He never changed that designation during his lifetime. *Id.*, Ex. 1; Hajbabaee's Opp'n to Laylee's Mot., ECF No. 29 [hereinafter Hajbabaee's Opp'n], at 2 (not disputing fact in Laylee's Mot. at 2 ¶ 1).

Farhad married Hajbabaee in October 2023. Hajbabaee's Opp'n at 7 ¶ 1. The following year on or around July 7, 2024, Farhad contacted Assar and asked her, as his power of attorney, to replace Laylee with Hajbabaee as the payable-on-death beneficiary on the Chase account. *Id.*, Ex. D, ECF No. 29-4; *id.*, Ex. C, ECF No. 29-3 [hereinafter Assar Interrog.], at 3–4. Assar thereafter took steps to carry out Farhad's wishes. Assar Interrog. at 3–4. But before Assar could make the change, Farhad died on July 17, 2024, in Iran. The precise time of his death is important and, as discussed below, vigorously disputed. Laylee's Mot. at 3 ¶ 4; Hajbabaee's Opp'n at 2–4.

On that same day, Assar, not aware of Farhad's passing, opened a new Chase savings account in her own name (account number ending in 6212) and transferred the over $1.7 million in account 2083 into that new account. According to Assar, she did so to protect the money "until a replacement account or designation could be established." Laylee's Mot., Ex. 5, ECF No. 24-5; *id.*, Ex. 6, ECF No. 24-6; Assar Interrog. at 7–8. After learning of Farhad's death, Assar communicated that fact to Chase and advised that her power of her attorney had terminated as a result. Assar Interrog. at 8.

B.

On October 15, 2025, Assar brought this interpleader action to determine ownership of the funds held in Chase account 6212. *See* Compl., ECF No. 1. Assar named as Claimant-Defendants

2

both Laylee and Hajbabaee.[1]  *Id.*  Laylee and Hajbabaee then filed cross-claims against each other. Hajbabaee's Answer to Compl. for Interpleader & Declaratory Relief & Crossclaim, ECF No. 5; Laylee's (Am.) Pet. for Review of Conduct of Agent Pursuant to Power of Att'y & Compl. for Declaratory Relief, ECF No. 21.

Discovery commenced on March 26, 2025.  Order, ECF No. 17.  Before the discovery period ended, Laylee filed for summary judgment, asking that she be declared the proper owner of the funds.  Laylee's Mot. at 8.  Her motion turns on Farhad's time of death.  She notes that Hajbabaee admitted in response to an interrogatory that Farhad died at 4:05 AM Iran Standard Time (IRST), or 8:35 PM ET.  *Id.* at 3 ¶ 4; *id.*, Ex. 3, ECF No. 24-3 [hereinafter 1st Hajbabaee Interrog.], at 2.  Laylee also produced Chase records suggesting that Assar transferred the funds after Farhad's death.  Those records show that Assar opened the new account one minute after Farhad's death at 8:36 PM ET, *id.* at 3 ¶ 5; *id.*, Ex. 5, and initiated transfer of the funds seven minutes later at 8:43 PM ET, *id.* at 3–4 ¶¶ 5–7; *id.*, Ex. 11, ECF No. 24-11; *id.*, Ex. 12, ECF No. 24-12.  The actual funds transmission, according to Chase records, occurred at 11:00 PM ET.  *Id.* at 4 ¶ 10; *id.*, Ex. 12.  According to Laylee, this timeline means that the monies still were in account 2083 at the time of Farhad's death and, by operation of District of Columbia law, transferred to her as the payable-on-death beneficiary.  *Id.* at 7 (citing D.C. Code § 19-602.12(b)(2) (providing that, upon the death of the sole party on an account with a payable-on-death beneficiary, "sums on deposit belong to the surviving beneficiary")).  Assar's later movement of the money to a new account therefore had no legal effect because Assar had no authority to transfer funds that belonged to Laylee.  *Id.*

---

[1] Farhad's mother, Parichehr Tadjalli, was also named a Claimant-Defendant.  *See* Compl.  Tadjalli has not participated in these proceedings.

Hajbabaee opposed. She asserts that there remains a genuine dispute of material fact concerning the time of Farhad's death. Hajbabaee's Opp'n at 10–16. If Assar initiated the funds transfer *before* Farhad's death, the transfer was a valid exercise of her power of attorney and had the legal effect of removing the funds from an account for which Laylee was the payable-on-death beneficiary. *Id.* Even if Assar initiated the funds transfer *after* Farhad's death, Hajbabaee contends that District of Columbia law recognizes the legal effect of such transfer because Assar was acting in good faith without knowledge of his death. *Id.* at 17–18 (citing D.C. Code § 21-2601.10(d) (providing that the actions of a power of attorney who is unaware of the principal's death and acts in good faith still "binds the principal and the principal's successors")).

Hajbabaee also takes issue with Laylee treating her interrogatory response about Farhad's time of death as a settled fact. *Id.* at 15–16. In her opposition brief, Hajbabaee contends that, as a lay person, her belief that Farhad died at 8:35 PM ET does not preclude her from coming forward with other evidence to establish a different time of death. She argues that expert testimony is "required" to firmly establish the time of death. *Id.* In a later filing, after the court invited additional briefing, Hajbabaee purports to disavow her interrogatory response altogether. Hajbabaee's Suppl. Mem., ECF No. 46 [Hajbabaee's Suppl.], Ex. B, ECF No. 46-2 [hereinafter 2d Hajbabaee Interrog.], at 2–3. She now asserts that "she is not a medical professional and does not know the specific time [Farhad] died." *Id.* at 3. Finally, Hajbabaee contends that the court should deny summary judgment "as discovery is not yet complete." Hajbabaee's Opp'n at 18–20; Hajbabaee's Suppl. at 4–6.

4

III.

A.

The court holds that a ruling in favor of Laylee is not warranted at this time. The key question is whether Farhad already had died when Assar initiated the funds transfer to the new account at 8:43 PM ET on July 17, 2024.[2] If he was alive then, Assar's power of attorney remained valid and she had the authority to transfer the funds. On the other hand, if he died by 8:43 PM ET, Assar's power of attorney terminated upon Farhad's death. D.C. Code § 21-2601.10(a)(1). And under § 19-6012.12(b)(2) of the District's Uniform Nonprobate Transfers on Death Act ("D.C. UNTDA"), the funds already "belong[ed]" to Laylee as the account's payable-on-death beneficiary, notwithstanding Assar's good faith. *See infra* Section III.B. Because Assar had no authority to transfer money owned by Laylee, any transfer after his death would not be valid.

To fix the time of death, Laylee relies primarily on Hajbabaee's first interrogatory response that Farhad died at 8:35 PM ET. Laylee's Mot. at 6–7; 1st Hajbabaee Interrog. at 2. Hajbabaee has tried to walk that admission back, *see* 2d Hajbabaee Interrog. at 3, which Laylee vigorously protests, *see* Laylee's Suppl. Briefing, ECF No. 45, at 5–15. Laylee's position is entirely reasonable. *Cf. Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (describing the "sham affidavit rule" as precluding "a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony" (citation omitted)).

---

[2] For present purposes, the court assumes that Assar's initiation of the transfer—not when the transfer actually occurred more than two hours later—is the relevant act of legal consequence. *See In re Est. of Capuzzi*, 684 N.W.2d 677, 680 (Mich. 2004) ("[W]hen an agent has completed all necessary actions and all that is left is for a third party to act to complete the transaction, we hold that the principal's death has no effect on the validity of the transaction and does not relieve the requirement on the third party to act. This is because the agent's actions were complete at the time of the principal's death." (emphases omitted)).

5

Still, the preference in this Circuit is to permit parties to complete discovery before ruling on summary judgment. *See Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" (citation omitted)). And because discovery is not yet closed, the court is disinclined to give Hajbabaee's admission the preclusive effect that Laylee desires. *See Galvin*, 488 F.3d at 1030 ("A supplemental affidavit filed by an interested party should not be deemed inadmissible solely because it was filed in response to a motion for summary judgment, however; the important considerations are whether the affidavit contradicts a prior sworn statement without justification or the filing party breached its obligations in discovery."). Accordingly, the court believes that Hajbabaee is entitled to complete discovery before the court rules on Laylee's motion.

Laylee's submission of an emergency medical service record suggesting a time of death before 4:07 AM IRST, or 8:37 PM ET, does not change the court's view. *See* Laylee's Mot. to Suppl. the Undisputed Facts in the Mot. for Summ. J. [hereinafter Laylee's Mot. to Suppl.], ECF No. 33, Ex. A, ECF No. 33-1 (report stating that emergency personnel arrived at Farhad's address at "04:06:51" and noting "Death prior to technician's arrival"). Hajbabaee has raised reasonable questions about the report's contents, which additional discovery might address. *See* Hajbabaee's Opp'n to Laylee's Mot. to Suppl., ECF No. 40, Ex. 1, ECF No. 40-1, ¶¶ 8–10.

**B.**

Before concluding, the court addresses two potentially relevant matters. First, Hajbabaee asserts that Assar's funds transfer was valid even if initiated after Farhad's death. Hajbabaee's Opp'n at 17–18. She points to D.C. Code § 21-2601.10(d), which provides that "[t]ermination . . . of a power of attorney is not effective as to the agent or another person that, without actual knowledge of the termination, acts in good faith under the power of attorney." That provision

6

continues: "An act so performed, unless otherwise invalid or unenforceable, binds the principal and the principal's successors in interest." D.C. Code § 21-2601.10(d). Applying that provision here, Hajbabaee argues that Assar's power of attorney had not yet terminated at the time of the transfer. Hajbabaee's Opp'n at 17–18. Assar says she learned of Farhad's death sometime "[l]ate on July 16 or perhaps very early July 17." Assar Interrog. at 8. Because Assar did not know that Farhad had died when she initiated the transfer and because she was acting in good faith, Hajbabaee insists that the transfer had legal effect.

Hajbabaee overreads § 21-2601.10(d). For one, a transfer by Assar after Farhad's death would be "invalid or unenforceable" because ownership of the funds already would have passed to Laylee, and Assar had no authority to transfer her funds. Furthermore, the statute prevents only "the principal and the principal's successors in interest" from disclaiming the validity (or invalidity) of the power of attorney's actions. D.C. Code § 21-2601.10(d). But Laylee was a payable-on-death beneficiary to the account, not a successor in interest to Farhad's estate. The transfer therefore was not "bind[ing]" on her.

Second, Hajbabaee contends that Farhad's "intention should control the determination of ownership of the funds from his Chase account that are the subject of this litigation." Hajbabaee's Suppl. at 2. The argument seems to be that, because Farhad intended to make Hajbabaee the account beneficiary before his death, that intent controls, regardless of whether Farhad formally made the change. The court thinks that position is likely wrong—though the court does not need to make a firm determination at this time.

Section 19-602.13 of the D.C. UNTDA provides that "[t]he type of account may be altered by written notice given by a party to the financial institution to change the type of account or to stop or vary payment under the terms of the account. The notice must be signed by a party and

7

received by the financial institution during the party's lifetime." D.C. Code § 19-602.13(a). That section further provides that "[a] right of survivorship arising from the express terms of the account, section 19-602.12, or a [payable-on-death] designation, may not be altered by will." *Id.* § 19-602.13(b). The D.C. Court of Appeals has interpreted § 19-602.13(a) to "strictly appl[y] according to its terms, such that mere verbal notice or other actual (though unsigned) notice is not sufficient to alter the terms of the account." *Reed v. Rowe*, 195 A.3d 1199, 1206 (D.C. 2018). That principle would appear to cover a party changing a payable-on-death beneficiary. *See id.* at 1207 (citing favorably to *Matter of Est. of Leier*, 524 N.W.2d 106, 110 (N.D. 1994), which interpreted a provision identical to § 19-602.13 to mean that "'[a] right of survivorship [in an account] arising from the express terms of the account . . . or a [payable-on-death] designation, may not be altered by will,' but can only be altered by a written notice given by the party to the financial institution." (quoting N.D. Cent. Code § 30.1-31-10) (alteration in original)).

It is undisputed that neither Farhad nor Assar ever presented a written change notice to Chase. Therefore, the payable-on-death beneficiary remained Laylee when Farhad died. His unfulfilled intent to make a change therefore likely does not "control," as Hajbabaee urges. Hajbabaee's Suppl. at 2.

## IV.

For the foregoing reasons, the court denies Laylee's Motion for Summary Declaratory Judgment, ECF No. 24, as premature because Hajbabaee has not had a full opportunity to conduct discovery with respect to a genuine dispute of material fact. The court grants Laylee's Motion to Supplement the Undisputed Facts in the Motion for Summary Judgment, ECF No. 33.

Because the court authorizes discovery to proceed, Laylee's Motion for Protective Order, ECF No. 35, is denied.

Dated: October 23, 2025

                                                    Amit P. Mehta
                                            United States District Judge